UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-07745-CAS-ASx | Date | September 14, 2026 |
| Title | Dolores Loera v. Nissan North America, Inc. et al | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Andrew Jung | Mohammad Tariq<br>Jason Richardson |

**Proceedings:** ZOOM HEARING RE: PLAINTIFF DOLORES LOERA'S MOTION TO REMAND TO LOS ANGELES COUNTY SUPERIOR COURT (Dkt. 11, filed on August 14, 2026)

## I. INTRODUCTION

On February 23, 2026, plaintiff Dolores Loera ("plaintiff") filed this action in Los Angeles County Superior Court against defendants Nissan North American, Inc. ("Nissan") and Does 1 through 10 (collectively, "defendants"). Dkt. 11-2 ("Compl."). Plaintiff asserted three causes of action against defendants pursuant to the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Cal. Civ. Code §§ 1790 et seq.: (1) breach of express warranty; (2) breach of implied warranty; (3) violation of section 1793.2(b).[1] Id. That same day, plaintiff effectuated service of the complaint on defendants. Dkt. 11-3. On March 26, 2026, Nissan filed an answer. Dkt. 1-2.

On July 15, 2026, Nissan removed plaintiff's action to this Court, based on diversity jurisdiction. Dkt. 1.

On August 14, 2026, plaintiff filed the instant motion to remand the action to Los Angeles County Superior Court. Dkt. 11 ("Mot."). On August 24, 2026, Nissan filed an opposition. Dkt. 12 ("Opp."). On August 31, 2026, plaintiff filed a reply. Dkt. 13. ("Reply").

[1] Section 1793.2(b) requires manufacturers to "service[] or repair[]" an alleged defect "so as to conform to the applicable warranties within 30 days." Cal. Civ. Code § 1793.2(b).

On September 14, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

In her complaint, plaintiff alleges that the action arises out of "warranty and repair obligations" of Nissan in connection with her December 30, 2023 purchase of a 2024 Nissan Frontier ("vehicle"). Compl. ¶¶ 4, 8. Plaintiff alleges that she is a citizen of California and that Nissan is a Delaware corporation. Id. ¶ 3.

Plaintiff alleges that the "amount paid/payable" by her for the vehicle, "as reflected in the sales contract, is $73,045.50." Id. ¶ 8. Plaintiff alleges that the vehicle was delivered to her with "serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to, electrical, structural, transmission, suspension, and steering system defects." Id. ¶ 10.

Plaintiff alleges that she first presented the vehicle "for repairs in September 2025, with approximately 13,616 miles on the odometer" because "wind noises emitt[ed] from the doors" and "the liftgate failed to open using the Key Fob." Id. ¶ 11. Plaintiff alleges that she subsequently presented the vehicle two more times in October 2025 because "wind noises repeatedly emitt[ed] from the doors," "harsh gearshifts occurred," and "the steering wheel recurrently exhibited difficulties turning." Id. ¶¶ 12, 13.

Plaintiff seeks "all incidental, consequential, and general damages resulting from [Nissan's] failure to comply with the Song-Beverly Act." Id. ¶ 31. Plaintiff further alleges that because Nissan "willfully violated the Song-Beverly Act, she is entitled, in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages." Id. ¶ 33. Finally, plaintiff seeks "reasonable attorney's fee and costs of suit." Id. at 9.

## III. LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a).

There are three pathways for removal of an action from state court based on diversity jurisdiction. See Roth v. CHA Hollywood Med. Ctr., L.P., 720 F.3d 1121, 1124 (9th Cir. 2013). The first and second pathways are contained in 28 U.S.C. § 1446(b) and impose thirty-day deadlines for removal. See Dietrich v. Boeing Co., 14 F.4th 1089, 1093 (9th Cir. 2021). The third pathway is based on reading 28 U.S.C. § 1446 together with 28 U.S.C. § 1441 and permits removal up to one year from the filing of the complaint, but this pathway only applies if the first two do not. See Roth, 720 F.3d at 1125-26.

The first pathway comes from section 1446(b)(1), which requires a notice of removal to be filed within thirty days of the defendant receiving "a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). The second pathway comes from section 1446(b)(3), which provides that if the initial pleading does not indicate the case is removable, the thirty-day clock starts running when the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). See Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 692-93, 695 (9th Cir. 2005). Such "amended pleading, motion, order or other paper" must make a ground for removal "unequivocally clear and certain." Dietrich, 14 F.4th at 1095.

A notice of removal is "defect[ive]" under § 1447(c) if a party "fail[s] to comply with the time limit provided in § 1446(b) for filing a petition for removal in state court." Kamm v. ITEX Corp., 568 F.3d 752, 755 (9th Cir. 2009). Section 1447(c) "is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." Acad. of Country Music v. Cont'l Cas. Co., 991 F.3d 1059, 1061 (9th Cir. 2021) (citing Cal. ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004)). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)).

## IV. DISCUSSION

The parties do not dispute that complete diversity of citizenship is satisfied or that the amount of controversy exceeds $75,000. Mot. at 2-4; dkt. 1 at 2-5.

However, plaintiff argues that this Court should remand the action to Los Angeles County Superior Court because Nissan's removal was untimely. See generally Mot. Specifically, plaintiff argues that the basis for removal was sufficiently clear from the face of the complaint, and thus Nissan was required to remove the action within the thirty-day removal period set forth in 28 U.S.C. § 1446(b)(1), which it failed to do. Id.

In opposition, Nissan argues that the amount in controversy was indeterminable from the complaint and that its removal was timely because it occurred within the one-year outer limit of 28 U.S.C. §§ 1441, 1446. See generally Opp. Specifically, Nissan argues that the amount in controversy must take into account various statutory deductions, and given that plaintiff failed to provide Nissan with sufficient information for it to properly deduce those deductions, the amount in controversy was not "unequivocally clear and certain" from the face of the complaint to trigger the section 1446(b)(1) deadline. Id.

Therefore, the resolution of plaintiff's motion to remand turns on whether the amount in controversy was sufficiently clear from the face of the complaint. For reasons given below, the Court concludes that the amount in controversy was sufficiently clear from the face of the complaint and that Nissan was thus required to remove this action no later than thirty days after service of the complaint on February 23, 2026. Because Nissan did not remove this action until July 15, 2026, the removal was untimely.

### A. The "Unequivocally Clear and Certain" Test Does Not Apply to Removal Based on an Initial Complaint

As a threshold matter, this Court must identify the proper test for determining whether an initial pleading triggers the thirty-day removal deadline pursuant to 28 U.S.C. § 1446(b)(1).

Relying on the Ninth Circuit's opinion in Dietrich, Nissan argues that the standard to trigger the thirty-day removal clock based on an initial pleading is "more demanding than the plausibility standard applicable to the notice of removal itself" and that "a complaint must make [jurisdictional facts] 'unequivocally clear and certain' before it triggers the 30-day clock." Opp. at 5 (citing Dietrich, 14 F.4th at 1095).

But Nissan misreads Dietrich. In Dietrich, the Ninth Circuit adopted the "unequivocally clear and certain" standard as the appropriate standard specifically for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL ‘O’ JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-07745-CAS-ASx | Date | September 14, 2026 |
| Title | Dolores Loera v. Nissan North America, Inc. et al | | |

second removal pathway pursuant to 1446(b)(3)—*not* for the first removal pathway pursuant to 1446(b)(1). Dietrich, 14 F.4th at 1093; accord Larios v. Nissan N. Am., Inc., No. 2:25-CV-05095-AJR, 2025 WL 2402250, at *4 (C.D. Cal. Aug. 16, 2025) (“Thus, the Court concludes that the ‘unequivocally clear and certain’ test only applies to the second pathway under Section 1446(b)(3).”); Givens v. Lawson, 2022 WL 4586250, at *2 (D. Or. Aug. 30, 2022) (“Dietrich’s ‘unequivocally clear and certain’ standard only applies to the second pathway under section 1446(b)(3).”), report and recommendation adopted, 2022 WL 4551533 (D. Or. Sept. 27, 2022).

Indeed, the Ninth Circuit did so only after differentiating between the first and second pathways for removal: whereas the first pathway requires “only a pleading that ‘set[s] forth’ a ground for removal to start the removal clock,” the second pathway requires “an amended pleading, motion, order, or other paper from which a ground for removal may be ‘ascertained.’” Dietrich, 14 F.4th at 1093. Based on that distinction in the statutory language across those two provisions, the Ninth Circuit echoed the Fifth Circuit’s conclusion that, in contrast to the first pathway, the second pathway “seems to require a greater level of certainty or that the facts supporting removability be stated *unequivocally*,” id. at 1093 (citing Bosky v. Kroger Tex., LP, 288 F.3d 208, 211 (5th Cir. 2002)), and ultimately adopted the “unequivocally clear and certain” test from the Fifth and Tenth Circuits for only the second pathway pursuant to section 1446(b)(3), id. at 1094.

Therefore, the Court is unpersuaded by Nissan’s argument that “a complaint must make [jurisdictional] facts ‘unequivocally clear and certain’ before it triggers the 30-day clock.” Opp. at 5. Rather, based on the foregoing, the Court concludes that the less demanding standard of section 1446(b)(1), which requires only that an initial pleading “set forth” a ground for removal before it triggers the thirty-day clock, governs here.

**B. The Complaint on its Face “Set Forth” a Ground for Removal**

With this clarified standard in mind, the Court now determines whether the complaint “set forth” a ground for removal so that it triggered the thirty-day deadline for removal for Nissan. The Court concludes that plaintiff’s complaint did so, triggering a thirty-day deadline for removal that Nissan missed.

Here, plaintiff included in her complaint the purchase price of the vehicle ($73,045.50) and pled maximum civil penalties under section 1794(c) in the amount two

times plaintiff's actual damages. Compl. ¶¶ 8, 33. Courts in this District have repeatedly found that purchase price and civil penalties are sufficient for purposes of determining the amount in controversy for diversity jurisdiction. See, e.g., Terrell v. Volkswagen Grp. of Am., Inc., No. 1:26-CV-02521-KES-CDB, 2026 WL 2268680, at *3 (E.D. Cal. Aug. 6, 2026) ("[A]s pled, [plaintiff] placed into controversy the purchase price and civil penalties, which was sufficient for Volkswagen to determine whether the amount in controversy was met."); Galaviz v. Gen. Motors, LLC, No. 2:25-CV-07039-JLS-MAR, 2025 WL 3022665, at *4 (C.D. Cal. Oct. 28, 2025) ("Because the Complaint alleges Defendant's willful behavior and includes a request for civil penalties in the amount of two times Plaintiff's actual damages, Defendant could also ascertain the civil penalties at issue."). Accordingly, plaintiff's complaint here "set forth" a ground of removal pursuant to section 1446(b)(1).

Nissan, however, argues that the amount in controversy cannot be determined based on the purchase price alone and must factor in applicable statutory deductions. Opp. at 5-8. Specifically, Nissan argues that the use offset should be factored into calculating the amount in controversy pursuant to the Song-Beverly Act and that because plaintiff's complaint lacked information which would have allowed Nissan to factor in the use offset, the thirty-day removal deadline was not triggered by the complaint. Id. at 6-8.

District courts in the Ninth Circuit are split as to whether consideration of the use offset is appropriate when calculating the amount in controversy. Contrast Canesco v. Ford Motor Co., 570 F. Supp. 3d 872, 898-901 (S.D. Cal. 2021) (surveying cases, and concluding that consideration of the use-offset is appropriate), with Akulyan v. Mercedes-Benz USA, LLC, No. 2:25-CV-02986-SPG-SSC, 2025 U.S. Dist. LEXIS 173453, 2025 WL 2553443, at *4 (C.D. Cal. Sept. 4, 2025) (surveying cases, and concluding that consideration of the use-offset is not required). Furthermore, the Ninth Circuit case that Nissan cites for the proposition that "consideration of the [u]se [o]ffset [is] appropriate" in determining the amount in controversy, while persuasive, is not binding because it is unpublished. Schneider v. Ford Motor Co., 756 F. App'x 699, 701 n.3 (9th Cir. 2018).

But even assuming that the use offset should be factored in, Nissan had sufficient information from plaintiff's complaint to calculate the amount in controversy. That is because "the only information needed to calculate the use offset" are "the number of

miles driven before the first repair attempt for the alleged defect" and the purchase price. See Larios, 2025 WL 2402250, at *6. Here, plaintiff stated in her complaint that she "first presented the Subject Vehicle for repairs in September 2025, with approximately 13,616 miles on the odometer." Compl. ¶ 11.

However, Nissan argues that more information is still needed to calculate the use offset. Opp. at 6. Specifically, Nissan argues that actual damages under Song-Beverly are defined as "the actual price paid or payable by the buyer" less a mandatory use offset—i.e., "an amount *directly attributable to use by the buyer* prior to the time the buyer first delivered the vehicle . . . for correction of the problem that gave rise to the nonconformity." Id. (citing Cal. Civ. Code § 1793.2(d)(2)(B)-(C)) (emphasis added). Thus, according to Nissan, the correct formula to calculate the use offset is: "(miles at first repair - miles at delivery) ÷ 120,000 × cash price," and that because plaintiff failed to include the miles at delivery, it could not have calculated the amount in controversy.

But this formula, even if proper, cuts against Nissan's own argument. Using the entire mileage on the odometer at first repair (13,616 miles) was already enough to place the amount in controversy at over $75,000. Compl. ¶ 11. Indeed, 13,616 ÷ 120,000 × 73,045.50 puts the use offset at $8,288.23, and $73,045.50 - $8,288.23 is $64,757.27; thus, with civil penalties of "up to two times actual damages," the amount in controversy would have well exceeded $75,000. Compl. ¶ 60. Nissan's claim that it could not have estimated the mileage offset because plaintiff failed to provide miles at delivery is consequently unavailing; any miles at delivery alleged would have only lowered the use offset, thereby increasing the amount in controversy.

Although plaintiff's complaint does not contain the information needed to calculate other statutory offsets such as negative equity or manufacturer's rebate, see generally Compl., it is reasonable to assume that these remaining potential offsets would not reduce plaintiff's actual damages (based on a vehicle purchased on December 30, 2023 for $73,045.50) so substantially that the amount in controversy would fall below the jurisdictional minimum, see Larios, 2025 WL 2402250, at *6 (citing Schneider, 756 F. App'x at 701). Indeed, Nissan's own preliminary investigation estimated only $9,687 in total deductions, which, even excluding the $655 it then added to plaintiff's actual damages for vehicle registration fees, leaves plaintiff's actual damages at $63,358.50, and that amount, coupled with additional civil penalties, substantially exceeds the $75,000

jurisdictional minimum. Dkt. 1 at 4 (“Nissan’s preliminary investigation revealed a total sales price of $73,045.50, as well as an estimated $9,687 in total deductions including estimate of mileage offset, optional devices and contracts, with a further $655 added for vehicle registration fees. This yields a plausible estimate of actual damages of $64,013.50.”).

Nissan finally argues that civil penalties are indeterminate because actual damages are indeterminate on the face of the complaint. Opp. at 7. However, this argument fails because, as already discussed, actual damages are ascertainable from the complaint.

Accordingly, the Court concludes that the amount in controversy was sufficiently deducible from the complaint and, as a result, Nissan’s removal was untimely.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiff’s motion to remand to Los Angeles County Superior Court.

IT IS SO ORDERED.

00 : 13

Initials of Preparer CMJ